IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARIE ANTOINETTE NOREM, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | |
| GLENN ALLEN NOREM, | § | |
| | § | |
| Respondent, | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| XXXXXXXXXXXXXXX, a Child, | § | |
| | § | |
| and | § | Civil Action No. 3:07-CV-0051-BF(G) |
| | § | |
| UNITED STATE OF AMERICA, | § | |
| | § | |
| Intervenor/Respondent, | § | |
| | § | |
| v. | § | |
| | § | |
| MARIE ANTOINETTE NOREM, | § | |
| GLENN ALLEN NOREM, | § | |
| ee.Parts.com, Inc., a/k/k eeParts, Inc., | § | |
| Catalyst Financial Corporation, | § | |
| Waylon McMullen, and | § | |
| Donald Hicks, St., in his capacity | § | |
| as Receiver, | § | |
| | § | |
| Counterclaim Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pursuant to the District Court's Order of Transfer (doc. 8), this is now a consent case before United States Magistrate Judge Paul D. Stickney. Before the Court is "United States' Motion for Summary Judgment; and Brief in Support." (Doc. 22). Only two of the defendants responded to this motion. Marie Antoinette Norem ("Mrs. Norem") filed a response on April 7, 2008. (Doc. 27).

1

Waylon McMullen ("McMullen") filed a separate response on April 7, 2008. (Doc. 28). The United States filed their reply on April 30, 2008. (Doc. 32).

## BACKGROUND[1]

On April 17, 2002, Mrs. Norem and Glenn Allen Norem ("Mr. Norem") filed a joint federal income tax return for the tax year ending December 31, 1999. (U.S. Mot. Summ. J. at 2.) On September 30, 2002, the Internal Revenue Service ("IRS") assessed $1,043,107 in federal income taxes, plus additional penalties and interest against Mr. and Mrs. Norem for their 1999 joint income tax returns. (*Id.*) The IRS provided notice of and demand for payment of this assessment to Mr. and Mrs. Norem. (*Id.*) Pursuant to 26 U.S.C. § 6321, a tax lien against Mr. and Mrs. Norem arose in favor of the United States on September 30, 2002 and attached to all of their property and rights to property. (*Id.*)

On August 4, 2004, an Agreed Final Decree of Divorce ("Divorce Decree") for Mr. and Mrs. Norem was entered. (*Id.*) The Divorce Decree established that both Mr. and Mrs. Norem were jointly liable for their 1999 income taxes and established receivership for certain community assets ("the Property") to be used for payment of their 1999 taxes. (*Id.*) The Property included among other things:

> 100% of the debt and equity interests, including but not limited to, options, warrants, promissory notes and debentures of the Parties holdings in the corporation known as Catalyst Financial Corporation, a Delaware Corporation, (hereafter "Catalyst").

> 100% of the debt and equity interests, including but not limited to, options, warrants, promissory notes and debentures of the Parties holdings in the corporation known as eeParts, Inc., a Delaware Corporation, (hereafter "eeParts").

---

1. For purposes of this motion, the United States, Mrs. Norem, and McMullen all agree to the facts contained in this section.

> Any and all moneies (sic) owed by eeParts to GLENN ALLEN NOREM for accrued salary.
>
> Any and all monies owed by Catalyst to GLENN ALLEN NOREM for accrued salary.

(*Id.* at 2–3.) In August 2004, Donald Hicks, Sr. was appointed to serve as the receiver/trustee for the Property. (*Id.* at 3.) Subject to the receivership, Mr. and Mrs. Norem continue to have rights in the Property. (*Id.*) Mr. Norem is an officer and director of Catalyst Financial Corporation and eeParts. (*Id.*) However, Mrs. Norem has no management role in either company. (*Id.*)

McMullen represented Mrs. Norem in the divorce proceedings. (Countercl. Def.'s Resp. to U.S. Mot. Summ. J. at 2.) The court handling the divorce awarded McMullen $56,717 in attorney fees. (*Id.*) On March 17, 2006, McMullen filed and recorded an Abstract of Judgment in the official public records of Dallas County, Texas. (*Id.*) On April 4, 2006 and April 11, 2006, the IRS filed Notices of Federal Tax Liens against Mr. Norem in the personal property records of Dallas and Denton Counties for unpaid taxes arising out of the 1999 tax year. (U.S. Mot. Summ. J. at 3.) These Notices of Federal Tax Lien perfected the statutory tax lien against third party creditors under 26 U.S.C. § 6323. (*Id.* at 3–4.)

Also on April 4, 2006, the IRS granted Ms. Norem innocent spouse relief under 26 U.S.C. § 6015(f) thereby relieving her of any further personal liability for the remaining balance of the couple's 1999 federal income taxes. (*Id.* at 3.) Despite additional notices and demand for payment Mr. Norem has neglected, failed, or refused to fully pay the remaining balance of the above described assessments, plus statutory interest and additions allowed by law. (*Id.* at 4.) As of December 17, 2007, the remaining balance due was $179,414.36. (*Id.*)

On June 30, 2006, in further efforts to satisfy these 1999 income tax liabilities, the IRS

issued a Notice of Levy under 26 U.S.C §§ 6331 and 6332 commanding Donald Hicks, Sr., to turn over "all property and rights to property" of Mr. Norem in his possession. (*Id.*) On December 18, 2006, Mrs. Norem filed an Emergency Motion for Distribution of Property Held by Receiver in the Dallas County Divorce Court proceeding seeking to obtain all or part of the assets. (*Id.*) The United States intervened and removed the Dallas County Divorce Court proceeding to this Court. (*Id.*) Additionally, the United States filed a counterclaim asserting that its federal tax liens against the Property are superior to all other claims, including those of Mrs. Norem. (*Id.*)

As part of its production in response to discovery served during the proceedings before this Court, eeParts produced a chart reflecting that as of March 31, 2007, Glenn Norem had accrued eleven months of salary at $12,500 for a total of $137,500, but that eeParts paid $48,500 to Glenn Norem, leaving $89,000 in accrued salary. (Pet'r Resp. U.S. Mot. Summ. J. at 4.) The Receiver's July 26, 2006 letter to the IRS responding to the Notice of Levy reflects a proffered transfer to the IRS of a "claim" for the $89,000. (*Id.*) Notwithstanding the requirement of the August 2004 Decree of Divorce that Glenn Norem turn over the rights of collection of his accrued salary of $89,000 to the Receiver, recently produced copies of W-2's issued by eeParts reflect that Glenn Norem paid himself through his company, eeParts, a gross salary $211,000, $179, 687.50 and $210,705.46 for tax years 2004, 2005, and 2006, respectively. (*Id.*)

## STANDARD OF REVIEW

The Court should only grant summary judgment if there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court views the facts in the light most favorable to the nonmoving party. *Whittaker v. BellSouth Telecomm., Inc.*, 206 F.3d 532, 534 (5th Cir. 2000). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the record that it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. If the nonmovant bears the burden of proof at trial, the summary judgment movant may satisfy his burden by pointing to the absence of evidence supporting the nonmovant's case. *Whittaker*, 206 F.3d at 534. At this point, the nonmovant must show that summary judgment is not appropriate by going beyond the pleadings to demonstrate "specific facts showing that there is a genuine issue for trial." *Id.* Mere conclusory allegations or denials unsupported by specific facts are not enough. *Id.* There must be evidence giving rise to reasonable inferences that support the non-moving party's position. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). The material facts in this case are not disputed.

## ANALYSIS

In the Government's motion for summary judgment, it makes three independent arguments as to why it is entitled to foreclosure of its federal tax liens for Mr. and Mrs. Norem's 1999 income taxes against personal property held by the receiver. The Government first claims that federal tax liens for Mr. and Mrs. Norem's 1999 incomes taxes attached on September 30, 2002, the date those taxes were assessed. Because no party qualifies for protection under 26 U.S.C. § 6323, the government argues that it is irrelevant that notices of this tax lien was not filed until after the Property was transferred into the receivership. The Government next argues that the IRS issued a Notice of Levy to the receiver, which attached to (1) all property presently owed by the receiver to

5

Mr. and Mrs. Norem; and (2) to all property held by the receiver against which there was a valid lien. Finally, the Government claims that even without the tax lien and the levy, the terms of the receivership require that the Property be liquidated and the proceeds be used to pay the 1999 income taxes prior to any payment to Mrs. Norem and McMullen. McMullen challenges all three of the Governments theories, while Mrs. Norem challenges the first two, but admits that the language of the Divorce Decree puts the IRS's interest ahead of her own.

**A. Federal Tax Liens**

While it is unclear from their response, Mrs. Norem and McMullen appear to challenge the Government's claim that the IRS has a valid tax lien on the Property. (*See* Pet'r Resp. to U.S. Mot. Summ. J. at 7; Countercl. Def.'s Resp. to U.S. Mot. Summ. J. at 3.) 26 U.S.C. § 6321 provides that a federal tax lien can attach to "all property and rights to property, whether real or personal" that belong to any person that neglects or refuses to pay any tax after demand. 26 U.S.C. § 6321; *Prewitt v. United States*, 792 F.2d 1353, 1355 (5th Cir. 1986). While state law determines whether the taxpayer has any rights to the property in question, federal law determines whether a federal tax lien will attach to that property or right. *United States v. Bess*, 357 U.S. 51, 57 (1958); *Aquilino v. United States*, 363 U.S. 509, 513 (1960). Mrs. Norem and McMullen argue that the Government cannot prevail because "the IRS does not have a lien or rights of recovery against a Receiver." (Pet'r Resp. to U.S. Mot. Summ. J. at 7.) This argument misunderstands the rule that a federal tax lien, for priority purposes, attaches on the date of assessment. *Prewitt v. United States*, 792 F.2d 1353, 1355 (5th Cir. 1986). *See also Cooper Indus. v. Compagnoni*, 162 F. Supp. 2d 702 (S.D. Tex. 2001) ("The lien arises at the time the assessment is made."). Assessment, in this case, occurred on September 30, 2002. On this date, Mr. and Mrs. Norem were still married. No one contradicts the

Government's assertion that Mr. and Mrs. Norem had rights to the Property in question on this date. Therefore, the federal tax lien attached to the property and rights to the property that belong to Mr. and Mrs. Norem on September 30, 2002.

This Property was transferred into the Receivership, in accordance with the Divorce Decree, almost two years after it was attached by the IRS. As a result, Mr. Norem's interest in the Property was already subject to statutory liens when the Divorce Decree established the receivership. The subsequent transfer of the Property into the receivership did not destroy the previously attached federal tax liens. *See Bess*, 357 U.S. at 57. The purpose of a federal tax lien is to maintain the IRS's interest in the property despite any transfer. *Id.* Therefore, the Court finds that a valid federal tax lien attached to the Property on September 20, 2002, which was maintained on the Property even after the receivership was established.

In addition to challenging whether the IRS has a valid tax lien, McMullen also appears to argue that even with a valid tax lien, he still has priority under § 6323.[2] Federal law "determines the priority of competing liens asserted against the taxpayer's 'property' or 'rights to property.'" *Aquilino v. United States*, 363 U.S. 509, 513–14 (1960). Priority is generally determined by the common law rule that the "first in time is the first in right." *Palandjoglou v. United Nat'l Ins. Co.*, 821 F. Supp. 1179, 1183 (S.D. Tex. 1993) (citing *Don King Productions v. Thomas*, 945 F.2d 529, 533–34 (2d Cir. 1991)). Under this common law rule, an unrecorded federal tax lien takes priority over all other claims. *Id.* Section 6323 modifies this rule, providing certain persons with protection against an unrecorded federal tax lien.

---

2. In her response, Mrs. Norem only challenges the existence of a valid federal tax lien. She does not argue that she has priority under either common law or under § 6323. Accordingly, the Court finds that the IRS has priority over Mrs. Norem.

McMullen claims to have priority over the unrecorded federal tax lien under §§ 6323(a) and 6323(b)(8). Section 6323(a) states "[t]he lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirement of subsection (f) has been filed by the Secretary." Those persons not specifically listed in the statute are not entitled to priority over an unrecorded federal tax lien. *Palandjoglou*, 821 F. Supp. at 1183.

McMullen appears to claims that he is a judgment lien creditor, and therefore, protected by the statute. A judgment lien creditor is described as

> a person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money. In the case of a judgment for the recovery of a certain sum of money, a judgment lien creditor is a person who has perfected a lien under the judgment on the property involved. A judgment lien is not perfected until the identity of the lienor, the property subject to the lien, and the amount of the lien are established . . . . If under local law levy or seizure is necessary before a judgment lien becomes effective against third parties acquiring liens on personal property, then a judgment lien under such local law is not perfected until levy or seizure of the personal property involved.

*Id.* at 1184 (citing *McDermott v. Zions First Nat'l Bank*, 945 F.2d 1475, 1480) (emphasis omitted). In order to determine if a judgment lien has been perfected, it is necessary to look at local law. Under Texas law, in order to perfect a judgment lien on personal property, "a form of execution such as a garnishment is required; no lien on the personal property of the debtor is created by filing an abstract of judgment." *United States v. Bollinger Mobile Home Sales*, 492 F. Supp. 496, 497 (N.D. Tex. 1980) (citing *Donley v. Youngstown Sheet and Tube Co.*, 328 S.W.2d 192 (Tex. Civ. App. - Eastland 1959, writ ref'd n.r.e.)). As a result, the abstract of judgment McMullen filed on March 17, 2006, alone, was insufficient to perfect the judgment lien under Texas law. There is no indiction that McMullen sought a writ of garnishment or any other form of execution. Accordingly,

8

McMullen does not qualify as a judgment lien creditor, and he is not entitled to protection under § 6323(a).

McMullen also asserts that 26 U.S.C. § 6323(b)(8) provides him with "superpriority" status because he was awarded attorney's fees in the Divorce Decree for his representation of Mrs. Norem in the divorce proceedings. (Countercl. Def.'s Resp. to U.S. Mot. Summ. J. at 3.) Section 6323(b)(8) states that

> Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid . . . . [with] respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, under local law, holds a lien upon or a contract enforceable against such judgment or amount, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement . . .

26.U.S.C. § 6323(b)(8) (2006). In determining whether a lien is enforceable under § 6323(b)(8), federal courts look to local law. *United States v. Betancourt (Betancourt I)*, 257 Fed. Appx. 785, 788 (5th Cir. 2007) (citing *United States v. Ripa*, 323 F.3d 73, 81 n. 8 (2d 2003)). Unlike some of the other states, Texas "does not provide for statutory liens by attorneys on sums recovered by a client. *Id.* (citing *Johnson v. Stephens Dev. Corp.*, 538 F.2d 664, 665 (5th Cir. 1976). *See also Strickland v. Sellers*, 78 F. Supp. 274, 278 (N.D. Tex. 1948) (stating that while attorneys in New York are "armed with a very strong charging lien by statute," attorneys in Texas do not have access to any similar statute).

Instead, there are two types of liens for attorney's fees recognized by Texas law. *United States v. Betancourt (Betancourt II)*, No. CRIM. B-03-090-S1, 2005 WL 3348908, at *2 (S.D. Tex. Dec. 8, 2005). First, in Texas, an attorney can assert a common law lien over a client's property in the attorney's possession. *Betancourt I*, 257 Fed. Appx. at 788; *Betancourt II*, 2005 WL 3348908, at *3. ("In Texas, an attorney may hold a lien for fees based on possession of the client's papers,

documents, or money collected for the client."). This is known as a possessory lien. *Betancourt II*, 2005 WL 3348908, at *3. "A possessory lien requires both actual possession by the attorney and that the property comes into the attorney's possession 'in his character as an attorney.'" *Id.* (citing *Thomson v. Findlater Hardware Co.*, 156 S.W. 301 (Tex. Civ. App. - Austin 1913) *rev'd on other grounds*, 109 Tex. 235, 237 (Tex. 1918)). McMullen has not shown that he has actual possession of any of the Property.

The second type of lien in Texas is created pursuant to a contractual agreement. *Id.* at 2. "Under Texas law, a contract may establish an attorney's lien for money received in judgment or settlement of a matter." *Id.* at 3. However, absent such a contract, no lien exists. *Id.* (citing *Strickland*, 78 F. Supp. at 277). McMullen does not argue the presence of a contract in this case, and no contract has been provided to the Court. Therefore, because the funds never came into McMullen's possession and no contract exists, McMullen does not meet the criteria for an attorney who holds a lien under Texas law. *See Betancourt I*, 257 Fed. Appx. at 788. Accordingly, McMullen is not entitled to the "superpriority" status provided by 26 U.S.C. § 6323(b)(8).

"Absent a provision to the contrary, priority for purposes of federal law is governed by the common law principle that 'the first in time is first in right." *United States v. McDermott*, 507 U.S. 447, 113 S.Ct. 1526, 1528 (1993). As discussed above, McMullen is not protected by §6323(a) or § 6323(b)(8). Therefore, the common law principle is used to determine priority. Under that rule, "a federal tax lien takes priority over competing liens unless the competing lien was choate, or fully established, prior to the attachment of the federal lien." *Palandjoglou*, 821 F. Supp. at 1183 (quoting *Don King*, 945 F.2d at 533). A federal lien attached on the date of the assessment, September 30, 2002. This occurred before the Divorce Decree was even entered. As a result, on the date of

attachment, McMullen did not have an interest in the Property. The Court finds that under the present facts, a federal tax lien, which has priority over McMullen's interest, arose on September 30, 2002 against Mr. and Mrs. Norem's property, in the amount of $1,043,107. The IRS, therefore, is entitled to foreclose on the Property to recover the remaining balance on this lien.

**B. Levy**

Mrs. Norem and McMullen also argue that the IRS's Notice of Levy does not attach to the Property in possession of and being administered by the Receiver. In other words, Mrs. Norem and McMullen claim that the IRS's Notice of Levy is wrongful. Federal tax liens and levies operate independently. *In the Matter of Sills*, 82 F.3d 111, 113–14 (5th Cir. 1996). Even if a levy is not valid, the federal tax lien is still enforceable. *Id.* at 114. One method of enforcing the federal tax lien independent from the levy is 26 U.S.C. § 7403. Section 7403 allows the IRS to enforce the federal tax lien through a foreclosure action. Therefore, having found a valid federal tax lien against the Property, it is unnecessary to consider Mrs. Norem and McMullen's challenge to the IRS levy.

However, even if the IRS did not have a valid federal tax lien, Mrs. Norem and McMullen's wrongful levy challenge would still fail. Section 6331(a) provides:

> If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. . . .

Persons claiming that their rights in the property subject to the levy are superior to those of the IRS can challenge the issuance of a levy. 26 U.S.C. § 7426 provides:

> If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property

was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered or sold by the Secretary.

Section 6532(c) requires that such suits be filed within nine months from the date of the levy unless a request is made for the return of the property. *United Sand and Gravel Contractors, Inc. v. United States*, 624 F.2d 733, 735 (5th Cir. 1980). If a request is made, the time period for challenging a levy is extended to the shorter of twelve months from the filing of the request or six months from the notification of the denial of the request. *Id.* The purpose of the short statute of limitations period for challenging wrongful levies is

> [T]o resolve doubts concerning the status of the taxpayer's account swiftly. If someone else successfully claims property already credited against the taxpayer's tax liability, the United States must look to other assets of the taxpayer to satisfy the taxpayer's liability. [Section] 6532(c) protects the legitimate interest of the United States in requiring other claimants of the seized property to bring their claims quickly.

*Id.* at 739. To achieve the purposes of the short statute of limitations period, the Fifth Circuit has held that the filing of a wrongful levy suit under 16 U.S.C. § 7426 is the "exclusive remedy" for non-taxpayers wishing to challenge a levy. *United Sand and Gravel Contractors, Inc. v. United States*, 624 F.2d 733, 739–40 (5th Cir. 1980).

While Mrs. Norem and McMullen, in their response, challenge the validity of the levy, they failed to file a wrongful levy suit under § 7426. Neither Mrs. Norem, nor McMullen point to any authority that provides an exception to the rule that § 7426 is the exclusive remedy for challenging a levy by non-taxpayers. The statue of limitations has since passed for filing a wrongful levy action. The purpose of the short statute of limitations and for allowing actions for wrongful levies would be frustrated if the Court allowed Mrs. Norem to challenge the levy at this point.

Moreover, even if the Court allowed the parties to attack the levy, it would not alter the

Court's decision that a valid federal tax lien attached on the day of the assessment. As already discussed, it is federal law, not state law that determines whether a lien or levy will attach to the property. *Aquilino*, 363 U.S. at 513–14. Section 6331(a) allows the IRS to issue a levy on property that is subject to a lien. Because the Property is subject to a lien, federal law allows the levy to attach despite its subsequent transfer into a receivership.

**C. Language of the Divorce Decree**

Mrs. Norem does not contest the Government's assertion that the terms of the Divorce Decree state that the Property should first be used to satisfy Mr. and Mrs. Norem's 1999 tax debt. However, McMullen claim that the language of the Divorce Decree provides him with priority over the IRS. Therefore, if this Court should order distribution of the funds as provided by the Divorce Decree, McMullen argues that his claims should have priority over the claims of the IRS. In support of his argument, McMullen states "[t]he Court, on page 18 of it's (sic) Order says: 'After payment of the Receivers, the Court hereby ORDERS AND DECREE, that the professionals retained by the various parties shall be paid in full as outlined below. Any funds remaining after the aforementioned distribution shall be paid to the U.S. Internal Revenue s (sic) Service for any and all tax, penalty, and interest obligations of the parties for tax years 1999, and 2000.'" (Countercl. Def.'s Resp. to U.S. Mot. Summ. J. at 3.)

As the government correctly points out in its reply, while this is an accurate quotation of the language on page eighteen, it is taken out of context. This language relates to the portion of the Divorce Decree that pertains to the liquidation and distribution of proceeds from certain real estate placed in the receivership. The real estate referred to in this section is not at issue in this case. Instead, the Court is concerned only with the personal property in the receivership. Because this

language refers to the distribution of the proceeds obtained from real estate, it does not support McMullen's assertion that the language of the Divorce Decree gives his claim priority over the IRS federal tax lien.

## CONCLUSION

The federal tax lien attached to Mr. and Mrs. Norem's property on September 30, 2002. Because Mr. and Mrs. Norem had an interest in the Property on this date, the Court finds that the Government has a valid tax lien against the Property. No party qualifies for protection against the unrecorded tax lien under 26 U.S.C. § 6323. Therefore, under the common law rule, the IRS's interest takes priority over all other claims. The IRS levy attached to the Property held in the receivership on June 30, 2006 because the Property was already subject to the federal tax lien. Moreover, Mrs. Norem and McMullen failed to properly challenge the levy under § 7426 within the nine month statute of limitations period. Finally, while the language of the Divorce Decree states the McMullen's interest in real estate proceeds is superior to the IRS's interest, it make no such declaration regarding the personal property in the receivership, which is at issue in this case. For these reasons, the Court **GRANTS** the Government's motion for summary judgment. Accordingly, the federal tax lien is ordered to be foreclosed and the Property sold in accordance with the law. Any remainder after the federal tax lien is satisfied shall be distributed as provided by the Divorce Decree.

**SO ORDERED.** June 2, 2008.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE